Good morning everyone. The panel has before it six separate appeals. Three are being submitted today without oral argument on the basis of the briefs. Those are Appeals 3122, Payton v. Office of Personnel Management, Appeals 7063, Winsett v. Department of Veterans Affairs, and Appeals 3168, Scalise v. Office of Personnel Management. We'll hear argument in the combined Tavory cases under Appeal Numbers 1527 and 1090. Mr. Conwell, good morning to you. Welcome to the court. Please proceed. Yes, my name is Don Conwell and I represent the appellant Warren Tavory. I want to address first the issue of co-inventorship. The district court impermissibly ignored the testimony of 11 disinterested witnesses, including two of the co-inventors. The actual reduction to practice of Mr. Tavory's idea of sending emails from an email system to a wireless network and the code itself. It would be helpful to me if you would go directly to the district courts point about why it took so long for this issue to be raised in view of the depositions and the other participations in the litigation. Well, your honor, the only two points that the court found, the district court found on the issue of co-inventorship, really did not relate to the issue of time. It wasn't a latches or limitations issue. The only two issues that he found were number one, what Mr. Tavory came up with could not receive a wireless email message. And number two, that what Mr. Tavory did was simply program at the direction of Tom Campagna, Mr. Ponsky, and Mr. Thalen. But the court did mention the point of why when Mr. Tavory was asked questions about what happened at this time, he didn't remember or didn't say I did it or any of the other things that he's now saying. Well, your honor, actually if you read that testimony, he did say he did it. He was never asked, did you conceive of this concept, of this idea of sending wireless emails to a wireless network. He was never asked that in the entire deposition. What he was asked was, did you write this code? Now when he was initially shown this code, it's the first time he had seen it in 12 years. Mr. Tavory had moved on. He thought that the project didn't go anywhere. He thought that there was no commercial success. The telephone went out of business. He knew nothing about this. And he shows up for a deposition, never having given a deposition in his life, never having seen a patent in his entire life, and he was shown code and he said, did you write this? Code that he wrote 12 years ago. He's a programmer by profession. He's actually a system developer. He had to study it, but at the end, he ended up saying between four and six times, yes, I did write that code. Yes, those are my initials. They never asked him, did you come up with the idea? That was never, ever asked. Now he has come in and now given an affidavit that has more information than he did at the time. And it's perfectly understandable that a man who hasn't seen this, talked to anybody about it for 12 years, comes in cold, according to his affidavit, at the conclusion of a vacation, walks in at 6 p.m. for a three-hour deposition in a hotel. Again, he's never given a deposition in his life and suddenly he's asked questions about something. He's going to say, I don't remember. But now since then, as he explains in his affidavit, he's gone back, he's found the people who were involved. As you talk to somebody about, do you remember that event? They'll say yes. They'll say something that triggers your memory and it goes on and on. And you do remember things. Since then, he's seen documents that were not shown to him at that deposition. I think it's perfectly understandable. In fact, it would have been disingenuous for him to come in here into a deposition in 2002 and act like he remembered everything when he was just being honest and said he did not. He has a perfectly credible explanation for why he remembers more now. The fact of the matter is, on the dispositive issue in this case, he was never asked one single question about co-inventorship. It's not there. Now, they have made a huge deal about it so as to make that something that it's not. But it doesn't say that. And really, you're getting into the issue of, well, is his testimony credible given his explanation? And I don't think that that would be appropriate at this stage of the case, which is summary judgment. So, have I answered your question? Well, yes, you've answered the question, but you haven't really relieved the issue here. There was a judge who participated in this entire lengthy litigation. It was notorious that it was going on, and I would guess in the circles in which your client was working, it was well known what the issues were and what the conventions were that were being litigated. And apparently, there was nothing but silence. Actually, well, that is not true that there was nothing but silence. He was only asked, did you write the code? And he said, yes, I wrote this code. And on the dispositive, he was never asked any questions about co-inventorship or who came up with this or when did you write this code? He was never asked the issue about when he wrote the code. None of that came up in his deposition. And as to whether or not he travels in circles that would know about this, he's not in this business now at all. He's in medical imaging. And that's what his focus has been on, is medical imaging. He doesn't own a Blackberry. He doesn't own such a device. And in our world, in the intellectual property world, as lawyers, this is big news. But it's not to everybody out there, and it certainly wasn't even known to him. But now we're looking at inferences. We're now on a summary judgment inferring that he must have known something about this when there's not even one bit of evidence that he did. So I just believe that you'd be going down the wrong road to believe what they're saying and ask you to read the transcript itself. It does not say that he was asked anything about co-inventorship. He was asked, did you write the code? And after studying it and spending some time looking at it, he said, yes, I did. Now, the two issues that the judge raised in his summary judgment ruling on why he was going to rule against Mr. Tavori on the co-inventorship was, as I said, number one, that his device, there's no evidence that his device could receive a wireless email. But in fact, that's not the case at all. There's plenty of evidence in the record that contradicts this. Now, starting with Mr. Tavori's own affidavit, he states that the email messages originated in an email program and that the email, the paging that he created used a true email client. And our expert, Dr. Kalinsky, explained that to be email, it's got to be composed in an email client such as Microsoft Outlook or something like that. So it's composed in such an email client and then format. Ted Andrews, who was the vice president of Telefine, testified that he used Mr. Tavori's invention himself. Before July 1990, before the time that Mr. Campagna claims that he, Mr. Ponsky, and Mr. Thalen sat down in a conference room in Chicago and the idea just popped into their head. That's the only explanation he ever gave for inventorship. And so before July 1990, Ted Andrews actually used at Telefine this email to pager invention that Mr. Tavori came up with. He said that he actually went into Telefine's email program. Once in the email program, he sent an email to a pager and he got the email. That's reduction to practice. Russell Dennard testified, and he was the IT employee responsible for maintaining the wireless network, testified that he sent emails from the email system. He said, I would go into the email system and I would construct an email and send it. That is certainly strong enough evidence to overcome summary judgment on the issue of whether or not what he did could send emails to a pager. Dan Pope, Telefine's field operations manager. I don't understand what you're arguing against. Nobody is claiming that the claimed system didn't work. Now they're saying that Mr. Tavori did not come up with this concept. And they're saying two things. Number one, he did not come up with the email to paging technology. And number two, that what he did develop did not receive email messages. They're saying it's just a text message. I'm not so concerned with what they're saying. You had the burden of proof on co-inventorship. And the trial court ruled that on the basis of the summary judgment papers, you didn't have anything of a case. So I'm trying to understand what your proof was, not what the argument of the other side is. Okay, under the rule of reason test, which this court uses to determine co-inventorship, you can look at the corroborating testimony of disinterested witnesses. There is corroborating testimony from 11 disinterested witnesses. You started out the argument saying the judge ignored those 11 witnesses. I don't see any basis for saying that the judge ignored anything. He says nothing in his decision at all about the testimony of these 11 witnesses. Well, that doesn't mean it was ignored. Well, in a summary judgment order, I believe he's required to set forth the basis for the summary judgment. Well, of course, but he's not required to discuss the testimony of every declarant or deponent. Well, Judge, we're here now on a de novo review, and I'm asking this court to look at the corroborating testimony of 11 disinterested witnesses. Getting back to something Judge Newman said, she said this judge sat through the NTP trial, but nobody ever talked to Ted Andros, the vice president of Telefine. Nobody talked to Russ Dennert, the person responsible for IT at Telefine. Nobody talked to Dan Pope. You mean in the earlier case? In the earlier case, or Paul Weitzner. None of these witnesses were deposed. None of this evidence was in front of the court, was in front of Judge Spencer in the NTP case. It wasn't there. We went out. We found the witnesses. We talked to the witnesses. Mr. Tavori's had no contact with them for 14, 15 years. And of these people who have no stake in this case whatsoever, who have no relationship with Mr. Tavori, gave unimpeached testimony that in the spring of 1990, Mr. Tavori developed a technology that sends emails to a wireless network. You mentioned Mr. Weitzner. He was both an affiant, but also I guess testified about his recollection of the events. But he was referring to MessageWriter, wasn't he? No, he was not. He was not referring to MessageWriter. I was just reading his deposition about a portable keyboard. You type in a message and then you hold it up to a phone and it hits in. That's MessageWriter, isn't it? Right, but that is something else. If you look at the appendix of pages 814 through 821, in page 823, he said he saw Mr. Tavori receive an email on his pager. And Mr. Tavori showed him how to send an email on his own pager. And that is the same testimony given by Beverly Clare, that it was an email. Dan Pope, the field operations manager, says he actually saw it originate, he says, quote, in the form of an email. Then Dan Pope says it was routed through the 3B2 computer and the Telefine hub and the lattice switches to the pager. The question is, are people using the term email a little loosely? That's really the issue that is raised by the MessageWriter issue. But I don't think you can say that they are using the term email loosely when they say that you have to open up the email client. Go into Microsoft Outlook. They weren't using Outlook, but let's say it was Outlook. That's the email client. They said you would have to open up the email client and compose a message. Who said that? That's not MessageWriter. Ross Denner said that at page 751 of the appendix, 754 and 756. Ted Andros said that at A773 through 77 and again at page 782 of the appendix. He would type in an email message using Telefine's email program. He even gave the name of the email program that was used at the time. That's not a wireless MessageWriter. Yeah. These people were very, very specific. What were these guys talking about when he was questioned about the MessageWriter? There was such a thing as a MessageWriter. Of course, but what was he talking about in his testimony? He talked about two things because he had used a MessageWriter, but then he said, Mr. Tavori came up with something that I had never used before. This is what each of them said. They said, before Mr. Tavori came up with this, we had no such capability to do what he did. Whatever it was, we didn't have that capability before. Now MessageWriter, they had before. If you look at their testimony, it's clear MessageWriter had been around at Telefine before Mr. Tavori ever showed up. But it's something different. Mr. Tavori explains that in his affidavit, how and why it's different. But these people always used the term email. They said it was something we could never do before, which must eliminate a MessageWriter. And they say that it came in the form of an email, according to Dan Pope. Russ Dennert, I get into the email system and I compose an email and it goes to the pager. Ted Andros, I go into the email program, compose an email, and it goes to the pager. But you look at all that corroborating evidence in the context of a motion for summary judgment. Unless you're going to draw every inference in the favor of NTP, you've got to rule in favor of Mr. Tavori and say that there is at least a disputed issue of material fact on the issue of co-inventorship. So your theory is essentially that you proved reduction to practice of the invention as claimed as of the spring of 1990 and that as a logical matter, that means the conception had to be even earlier. Well, I'm saying reduction to practice is one of the pieces of corroborating evidence which this court has said by itself could prove co-inventorship. I'm saying all these people said, number one, I actually used it. Mr. Tavori showed it to me, we got on my email system, and we actually used it. That's reduction to practice before July of 1990 when Mr. Campagna claims that he, Mr. Ponsky, Mr. Thelen, came up with this idea. And by the way, another significant fact, Mr. Ponsky and Mr. Thelen have been deposed. They said there was no such meeting. We never had a meeting, all we were ever involved with. And again, this stuff wasn't brought in the NTP trial, I don't know why. I wasn't a part of that. But they both testified, we never had such a meeting. We didn't use email at ESA in Chicago. Mr. Campagna has never used an email system in his life that I know of. These people not only were his co-workers in an eight person company with offices adjacent to his, these were people, in the case of Mr. Thelen, who was his closest friend. They completely say the opposite of what he says. I think that also is corroborating evidence when taken with Mr. Tavori's evidence, that this in fact occurred prior to July of 1990. Mr. Tavori is the one who came up with it. Now, another issue about whether or not Mr. Tavori is a gold digger. He's come in here, there's been a $600 million settlement, and he's coming in here, and he's just cashing in. His motivation isn't of much importance. The question is what the evidence is, and whether it meets summary judgment standards or not. Now, you have three minutes and 18 seconds left of your rebuttal time. So the question of whether you want to reserve some of that, and whether you want to say something briefly about fees. I want to reserve it all. And the fees issue I think is well briefed. And I would point to Taurus Negron, Buchanan, and U.S. v. Beasley, where the Fourth Circuit said, quote, without jurisdiction the court cannot proceed at all in any cause except to announce the fact and dismiss the case. Thank you. All right, thank you. Mr. Anderson. Good morning, Your Honor. May it please the court, I'm Kevin Anderson here on behalf of defendant NTP. I want to focus on the issue Judge Bryson raised about whether the message writer was email, because that was always one of the NTP's critical contentions, that it wasn't. And I'm extremely surprised to hear that it's so strongly argued today that that was actually disputed before, because it wasn't disputed in the summary judgment papers. And let me just point you to the record. In the summary judgment, in the Eastern District of Virginia, just like most district courts, when you file summary judgment, you're required to put a list of undisputed facts. The respondent is then required to put a list of those facts that they dispute. Local Rule, Local Rule 56, specifically says if you don't dispute it in a separately captioned section, the court may deem it admitted for summary judgment purposes. Let me point you to the record here. But you have to know it's an issue. That's right. And I'm going to point you right to the point where it was in our brief. If you turn to NTP's brief, at page 405 and 406 of the record, there are two undisputed facts that are critical that we put in. Undisputed fact 25. All of the declarants of the Tavori declarations have testified at deposition that Tavori was not sending, quote, electronic mail messages as construed by the court and required by all of the disputed claims of the patent. Undisputed fact 36. The message writer was a small handheld device that permitted the user to enter and send an alphanumeric page over the telephone network to a pager but had nothing to do with electronic mail messages. That was NTP's undisputed facts. If you turn to Tavori's response, which is found in the appendix of A676 and 77, the court can see that in the separately captioned section required by the local rules, called it a counterstatement, there is absolutely nothing in there that disputes undisputed fact 25 and 36. He says that it contributed the software which affected one aspect of the overall device. No, what he says is that, and he says this on page 19 of his reply brief, the issue is framed that he had this system entirely working for the August conception of Campana. That's how the issue is framed in his reply brief on page 19. And so the question here is what were these declarants allegedly seeing? We always said that they weren't in email. As you can look at his counterstatement of undisputed facts, they did not dispute those undisputed facts. Moreover, this was a specific argument we made in our brief, throughout our brief, in our summary judgment brief. If the court can turn back to our brief, on page A427, we have a section captioned, Tavori relies solely on the hearsay laden affidavits describing data transmissions that admittedly do not meet the court's definition of electronic mail messages. We have a section that discusses that. You can turn to Tavori's counterarguments in his brief on page 6. He doesn't say that he created the entire from beginning to end structure. He says that he created the software that related to that one pushing aspect, which was critical and part of it. What he says is he created that before Campana came along. There's no corroboration whatsoever that he did. Everything that was seen before, Telefine was a paging network that sent out alphanumeric pages. It's unsurprising that some of the affiants saw alphanumeric pages on their pages because that was their business. And there's no evidence, no evidence that they saw anything other than the alphanumeric pages that existed in the prior art that are not the electronic mail messages that were in the patents. Well, how about the testimony that Mr. Conwell referred to earlier in his argument from Dennett and Andra. Setting aside for a moment the undisputed fact issue. Well, on the undisputed fact issue, just to point out, in their brief they never argued either and they never argued that message writer point at oral argument below. And that's why Judge Spencer on pages A15 and A16, he looks at there and he says they have these witnesses that came in and he's offered a number of statements from individuals who claim to have seen him using a quote wireless data device in the early months of 1990. He then goes on to say it should be noted that Tavori's device was technologically distinct from the wireless email systems that Mr. Campana and his associates patented. The point there was on the record before Judge Spencer there was no dispute about whether those were emails or not. On your point, whether they used the term email, using that term does not mean that what was actually sent meant the requirements of the claim as construed by Judge Spencer. That's very interesting, but that's not his argument. As I see it, I've been viewing it favorably to him and he points out that it was his software with his initials on it that Campana filed with the Patent Office. That is true, but his software with his initials on it that Campana filed with the Patent Office is dated months after Campana's admitted conception here. There is no evidence, there is software that was filed with the Patent Office that is dated November 25, 1990. Even he frames up the issue on page 19 of his reply brief as to whether he actually created that software before August 1990. That's the issue and there's no evidence whatsoever that he meets that issue. It's what he says on page 19 of his brief and this is how he's framed this whole case is whether he actually has evidence before August 1990 when Campana's declaration that he put to the Patent Office is in here with hundreds of pages of supporting corroboration. The only real question, this is according to Mr. Tavori, the only real question is whether, as Tavori contends, Tavori wrote a version of that code embodying the idea of pushing an email to a pager prior to the 1990 date that Campana claimed for conception of the invention. Affidavits come in and they're talking about the pager. That's right. They're talking about the pager that was not doing electronic mail messages. It was doing the old message writer pages that were well known in the art and that were the business of this company. The rule of co-inventorship is that you don't have to have invented the entire device. You have to have made a contribution. You do have to make a contribution but there's no evidence that he actually made a contribution to the invention as claimed with the electronic mail messages and the electronic mail. Also, the cases are replete that you're not an inventor merely by doing something that was well known in the prior art, by contributing something well known in the prior art. There's no evidence that Tavori conceived or any corroboration that they had anything to do with electronic mail messages before August 1990. There's simply no evidence and that's the standard by which they are pursuing this case. I want to come back if I could just to make sure I understand where the respective parties are on this question of the testimony, not the evidence, the testimony of Andros and Dennett. Yes. Are they, did they testify in effect contrary to the paragraph 25 of your undisputed facts that in fact there were electronic mail messages being sent or, what I'm trying to get clear in my mind I guess is are there three categories here possibly that we're talking about? One is an electronic mail message as construed by the court. Two, message writer, is that the term that's used? Message writer. And three, some other form of email that doesn't fall within the definition given by the court but still would constitute something beyond message writer. There very well could be. The point is he bears the burden of proving that whatever they termed as email, and I doubt they were even using that term then, but whatever they're now in 2006 after they talk with Mr. Tabori they term as email meets the limitations of the claims. There's no evidence whatsoever that it does except for Mr. Tabori in his own declaration says yes, it's the same as what's in the Campana system. Well, Finnegan, the ITC gem star, both say that an inventor's own testimony cannot be what relates the purported prior invention to the claimed elements. And this case is really indistinguishable from the Barb Dwyer case. I mean, in both instances all you have is oral testimony from a number of witnesses about long distant events. And the Supreme Court looked at that in Barb Dwyer cases and said that oral testimony from 24 witnesses specifically found credible by the district court is insufficient as a matter of law. Now, it is true that this court has said oral testimony can be one of the elements used to corroborate. That's been said in a number of cases. But he doesn't cite and I searched and never found a single case in this court where oral testimony solely sufficed to corroborate prior invention. There's not a single case out there that I'm aware of and certainly not one that he cited. So essentially what he's asking you to do is contradict the Supreme Court in Barb Dwyer and make an unprecedented ruling in this case and this case is even more like this. No, he's not. You haven't mentioned the software that Campana filed with the Patent Office? This software is several months after his purported invention. He cannot rely upon that software at all to get back to his August or Spring 1990 date. It's dated specifically November 25, 1990. The only testimony that there was any software like that at all before August 25, 1990 is Mr. Tavori's own testimony. He is saying yes, I had an earlier version and that goes to the fraudulent version that he attached to the complaint. He tried to go back and look at the 19 and that is an admission that he didn't have any previous software. He took that and he he recreated what he thought he had done previously. He told the copyright office this is what I've done previously. He told the court in his complaint here's my software back then which was extremely mystifying to us because there had been this large prior litigation and this software had never come up. He then lied about the provenance of that software during discovery and it was only at the very end where we find out this is a reconstruction with something he built in 2006 saying well here's what I had here's what's from November 25th 1990. I can remember 16 years in the past that I had this exact software earlier. That is not corroboration. Minus the date. Minus of course the date. He took the date out and he took that it was from Telify and these admissions are critical because what he's trying to do there isn't it's related to different aspects of the litigation but he's trying to say that he was an independent contractor because there's some hazy time during his relationship He was a contractor I guess. He had a contract relationship with the company. At first. Then he switched to an employee of Telify. When did that happen by the way? He doesn't know and he can't say and he won't provide any documents and the reason he has to say he did all this way before August 1990 is because if he did it after that it's much more likely that he was an employee of Telify and the copyright is a work for hire. This is getting into aspects of the case not directly on appeal but this is the underlying reason for this assertion that he has to go way back and why he cannot rely and does not rely on that August 25th 1990 that November 25th 1990 software. He is saying that he has to prove something before August. There's no documentary evidence none whatsoever. It's exactly like the barbed wire case and it's also exactly like the barbed wire case in that there's a huge dispute certainly by us that what was done previously whatever it was done didn't mean the claim elements and that's The patents this concept of work for hire in the patent law is not in or in the copyright law is not in the patent law. There might be such aspects as shop rights and so on but it's different. Yes I agree your honor but I was just explaining the underlying reasons for his assertions on the dates because there was a concurrent copyright case here that he's not appealing. So that's I'm not saying that that applies in any way to the patent case. I was just explaining to Judge Bryson the reason why this independent initial independent contractor relationship and the subsequent employee relationship had meaning in this case. And just like in the barbed wire case the way the Supreme Court actually overturned that case is they said even if all these people are honest there's no way that they can honestly tie what they saw at that fair with what's in the claimed elements. And in fact the Supreme that case is a much stronger case than here for actually doing corroboration because they have a specific date. They had the state fair in Iowa. They had that fair in Iowa. They knew what date that occurred. Here what we have is in 2006 basically a bunch of witnesses saying I don't know when it was but it was before Campana. That's not sufficient for corroboration. That's there's no how can anyone remember 16 years ago exactly what was going on. And that brings up the point that Your Honor raised about the prior deposition. Now whether Mr. Tavori is acting acted in good faith and remembered all this stuff I don't want to hang my hat on. But what the change in his testimony from 2002 to 2006 and 2007 shows is it really highlights the Supreme Court's point about long distant memories. And how those memories can be influenced by having conversations with people and you think you remembered what went back on there and then through those conversations you kind of self-affirm that what you now remember that was in fact a recollection back there. And this court and the Supreme Court have repeatedly said that that's that those type of memories are simply not sufficient. There's no case no case and it would contradict the Supreme Court Barbara case where this type of oral testimony alone suffices for corroboration. And the discussion of Barbara by Tavori throughout this entire case there's no discussion until his reply brief. He tries to make two points. First point he says is well Barbara was an anticipation case and this is an inventorship case and without citation says that there's different corroboration requirements. That can't be the law. There's no meaningful basis to distinguish between anticipation and inventorship. And in fact this court has said frequently in referencing Barbara related it to all aspects of inventorship. Whether it was a patentee trying to prove his prior invention or whether it was a defendant trying to prove that somebody else did a prior invention under 102G there's no basis for distinguishing Barbara in that case. His other point he basically says that there was no dispute unlike in Barbara that Tavori was doing exactly what's in the claims. Well as the past 18 minutes have shown that there was a big dispute on NTP's side and actually there was no dispute on his side before the district court that he wasn't doing what's in the claims. Now with the last two minutes I just wanted to touch on the unjust enrichment and the copyright aspects. I know he didn't discuss them but they're in the briefs. On unjust enrichment American Science Med did not ever consider section 256 preemption. And what he's asking for in paragraph 44 of his complaint is a sharing of the royalties from the successor of interest to the original inventors. It's exactly what 256 preempts. It's exactly what it preempts. On the copyright fees the issue  squarely put by the parties in his reply brief is whether there's been a material alteration in the legal relationship between the parties. On day one he had a valid copyright registration and he was suing us for certain activities. On day two he no longer has a valid copyright activity and he can't sue us for certain activities. That seems to me to be the quintessential change in the legal relationship between the parties. That's the standard. That's the standard that was affirmed or that was highlighted in the Supreme Court's case. I think it was just in December of this year. And in reviewing last night I noticed the first circuit case came out before that and seemed to focus on the standard of whether there was some specific judgment. But the Supreme Court said it's not limited to a specific judgment. It's whether this alteration in the material relationship between the parties. As Judge Spencer said there clearly was one. We think that's sufficient to support the fees. The argument as I understand it and the holding of Torres Negron is that if there is a dismissal for want of jurisdiction that that can't be in compliance with the Buchanan requirement that leads to a conclusion of prevailing parties. Is that your understanding of both Torres Negron and the argument? That is my understanding of Torres Negron and I don't think that Torres Negron was informed by the two parties. They explained that what Buchanan meant was a material alteration in the legal relationship between the parties. Because if one just reads Buchanan it gives specific citations about the form that this material alteration could change. I think it says judgment on the merits. I don't have the exact quote but Buchanan has certain language in there. But this case in December after Torres Negron explained that that includes a material alteration. It strikes me offhand that there's likely to be quite a range of different kinds of dispositions all of which would be characterized as dismissals for lack of subject matter jurisdiction that would have very different consequences. I mean there is for example that small category of cases under Bell v. Hood in which you dismiss for lack of jurisdiction because the claim is deemed entirely frivolous. I mean technically I suppose it's not a disposition on the merits but it certainly has that effect. Even Torres Negron did discuss subject matter challenges based on facial and factual challenges and that there's different levels. A facial one might be resolved more like a summary judgment. Here he has a valid registration on day one and he's suing us on day two. He doesn't have a valid registration. He can't say us and he speculates that at some point in the future he might get a valid registration but that's why Congress put in 507 the statute of limitations three years. I mean that's the statute of limitations. The court dismisses it on the second day. Would you say in that situation that would be a change in the legal rights of the parties? I mean it would be true that you would then be foreclosed forever from filing a civil rights act. That civil rights action in the court of international trade but  seem to be that's not. But you were already foreclosed. I mean you could spend the $25 and the time that takes to print out your complaint and go refile that in the court of international trade and that's going to get booted just the same. That wouldn't be the kind of thing. Your position is that that would fall outside of the sphere. I think that would be the type discussed as a facial subject matter jurisdiction challenge. Even here a good example is if you assert patent infringement but you don't say you have a patent or you assert copyright infringement and you don't have a copyright registration at all. Those that can be decided purely facial I think it would be difficult to say there's been a material alteration in the legal relationship out there. Similarly if I sue in the wrong court I don't really have a legal relationship certainly with respect to that court with my opponent there. Thank you. Mr. Conwell. I gave Mr. Anderson some additional time so we'll give you five minutes for rebuttal. Thank you very much. Let me just say one thing about Taurus Negron. Taurus Negron was resolved just like ours. It was a copyright case and it was dismissed for a lack of jurisdiction for a defect in the registration. It couldn't be any more on point. It's consistent with Buchanan and consistent with U.S. versus Beasley. We believe that's the law that should be applied here. There are several circuits, I guess, the tenth circuit, I think, the fourth circuit seemingly that would take a different approach. Certainly not the fourth circuit. Let's start with the first circuit. The first circuit in U.S. versus Beasley said, once the court determines there's no subject matter jurisdiction, case over, you do nothing else. If I could move on. But that was not in the context of an attorney fee award, right? Yes, that was. Well, it involved a criminal penalties, as I recall, and whether or not there was subject matter jurisdiction in the court to award these or impose these criminal penalties. Now the Dang case from the fourth circuit? They never addressed that issue. Well, you say they didn't address the issue. They awarded fees, right? They addressed the question of whether fees could be awarded. They didn't say they didn't have jurisdiction to award fees, right? The tax court never found one way or another on the issue of jurisdiction. They just said no fees are awarded here and the fourth circuit affirmed that. They never say a word about Dang and they cite the split of authorities that you referenced. So if Dang had done that they would have said so and that's  they    They didn't say that they could dismiss the plaintiff because the court concluded that the plaintiff's claim is frivolous. You can either dismiss for failure to    dismiss  plaintiff  dismiss for failure to dismiss the plaintiff. So you have to actually call out in response to a set of undisputed facts which you dispute and if you don't call them out as disputed then they would not be deemed admitted. That's correct. And there is evidence in the record from which I've already explained to the court showing that this was not a message writer, that this was an email sent out of an email client. Are you suggesting that somewhere in your briefing you objected to this or you didn't object to it but that because the trial court didn't specifically advert to this undisputed fact that it can't be taken as admitted? We argued in our brief that this was an email message, that it was not a message writer. The message writer already existed. The email was something that Mr. Tavori came up with. He came up with it with Russ Dennert. Russ Dennert provided him with specifications on the 3B2 in the spring of 1990. He used that to write code. After he wrote the code, he used it and could send an email, according to these witnesses, from their email client to their patron. I just want to make sure we're not talking past one another here. When you say email, are you saying an electronic mail message is construed by the court in the NTP case? That is what I'm saying. He said an email in the NTP case was a formatted message. Once you go into an email client, it is a formatted message. We thank both counsel. We'll take the appeal under advisement.